**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ALTONEY BAKER,

    Petitioner,                               CASE NO. 2:08-CV-11356
                                          HONORABLE NANCY G. EDMUNDS
v.                                           UNITED STATES DISTRICT JUDGE

DEBRA SCUTT,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DENYING CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case brought by a state inmate under 28 U.S.C. § 2254. Altoney Baker, ("Petitioner"), is currently confined at the Cotton Correctional Facility where he is serving a prison term of 15-to-50 years. The sentence results from his Wayne Circuit Court conviction for armed robbery. MICH. COMP. LAWS 750.529. Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Michigan Attorney General's Office, has filed a response, arguing that Petitioner's claims lack merit and are procedurally barred. For the reasons which follow, the petition will be denied.

**II. Background**

Petitioner's convictions arise out of a robbery occurring at the Dearborn Cafe on the night of January 21, 2006. At trial, Mariah Kennedy testified that she was working at the cafe and saw Petitioner park his red two-door car with black trim. Petitioner entered the

1

cafe, approached the cash register, and told Kennedy to "give him the green." Petitioner was wearing a grey hooded sweatshirt, and he held one hand in his pocket as if he was pointing something at Kennedy. Kennedy gave Petitioner all of the money from the register, including a single two-dollar bill. Petitioner exited the cafe and drove away.

Erinda Dragoni and her sister, Mariglena Dargoni, were also working at the cafe, and their testimony corroborated Kennedy's description of the robbery and her description of Petitioner and his vehicle. Mariglena testified that Petitioner "had his right hand in his pocket. It looked like he was holding something in it like a weapon. And it was pointing at Mariah." T 5-2-06, at 110. Erinda called the police after Petitioner left the cafe.

Police Officer Alex Ramirez was on patrol that night and received a dispatch regarding the robbery including a description of the perpetrator and his vehicle. He located Petitioner about two miles from the cafe where he had already been taken into custody by a police officer from Dearborn Heights. Petitioner was driving a red two-door Chevrolet Cavalier with black body molding on both sides, and he was wearing a grey hooded sweatshirt. Officer Ramirez patted down Petitioner and found $223 cash in his pocket including a single two-dollar bill.

After waiving his *Miranda* rights, Petitioner made a statement to Detective Mike Sabo. Petitioner admitted that he committed the robbery, but he claimed that he was high on drugs and did not have a weapon.

Officer Mark Meyers from the Dearborn Heights Police Department, heard the report of the robbery while he was on patrol. He observed a vehicle matching the description parked outside a party store. He placed Petitioner in custody when he emerged from the store. An officer from the Dearborn Police Department arrived and took custody of

2

Petitioner after an individual in the patrol car identified Petitioner as the perpetrator.

The jury found Petitioner guilty of armed robbery and he was subsequently sentenced as a third time habitual felony offender to a prison term of 15-to-50 years.

Following sentencing, Petitioner filed an appeal by right. Petitioner's brief on appeal raised four claims:

> I. The prosecutor did not present sufficient evidence to support the charge that Mr. Baker was armed to support a conviction for armed robbery, and as such his conviction violated Due Process of law.
>
> II. The prosecutor denied defendant a fair trial by "testifying" in closing argument to a fact which was not in evidence and injected unfair and prejudicial innuendo in order to influence the jury's decision.
>
> III. Mr. Baker is entitled to resentencing where the statutory sentencing guidelines were misscored under offense variable 9.
>
> IV. Defendant-Appellant Baker was subjected to an on the scene identification procedure that was so unduly and unnecessarily suggestive and conductive to irreparable mistaken identity that it amounted to a denial of his state and federal right to due process.

The Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. *People v. Baker*, No. 271084 (Mich. Ct. App. Sept. 13, 2007). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, but leave to appeal was denied because the court "was not persuaded that the questions presented should be reviewed." *People v. Baker*, No. 135145 (Mich. Sup. Ct. January 8, 2008).

Petitioner has now filed an application for writ of habeas corpus that raises the same claims that he presented to the state courts.

### III. **Standard of Review**

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. Analysis

## A. <u>Sufficiency of the Evidence</u>

Petitioner first claims that insufficient evidence was presented at trial to establish that he was armed when he committed the offense. Petitioner notes that no weapon was found in his possession when he was arrested. Respondent asserts that the Michigan Court of Appeals adjudication of the claim was not objectively unreasonable.

The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re WInship*, 397 U.S. 358, 364 (1970). The standard of review for these claims focuses on whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the state court reasonably applied that standard, the state court's findings of fact must be afforded a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996). In other words, the reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

The Michigan Court of Appeals rejected Petitioner's claim as follows:

In this case, the evidence showed that defendant repeatedly demanded the victim to "give him the green" while pointing something at her that was in his pocket. According to another victim, it looked as if defendant was holding a weapon in his hand that was in his pocket. Viewed in a light most favorably to the prosecution, there was sufficient objective evidence that defendant

5

> was armed with a weapon or an article fashioned in a manner to lead a person present to reasonably believe the article to be a dangerous weapon. Thus, the evidence was sufficient to support defendant's armed robbery conviction.

*Baker*, *supra,* at 1.

Under Michigan law, the prosecutor is not required to prove that a defendant was armed with a real weapon to sustain a charge of armed robbery. The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (*quoting People v. Turner*, 540 N.W.2d 728, 734 (Mich. App. 1995). The relevant statute defines "weapon" as "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." MICH. COMP. LAWS § 750.529. A robbery can therefore be classified as an armed robbery even if it involved a feigned weapon "such as a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon." *People v. Jolly*, 502 N.W.2d 177, 181-82 (Mich. 1993).

In the present case, viewing the facts in the light most favorable to the prosecution, the trial testimony established that Petitioner committed the robbery while he was armed with a weapon - as that term is defined by Michigan law. Kennedy reacted by emptying the cash register for Petitioner and she felt shocked and unable to move. Mariglena Dragoni testified that Petitioner "had his right hand in his pocket. It looked like he was holding something in it like a weapon. And it was pointing at Mariah." Given this testimony, a rational fact-finder could have concluded beyond a reasonable doubt that Petitioner held his hand in his pocket in a manner so as to "simulate the appearance of a weapon." *Id.*

6

Accordingly, the decision of the Michigan Court of Appeals was not objectively unreasonable, and Petitioner is not entitled to federal habeas corpus relief on this claim.

## B. Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor committed misconduct during closing arguments when he argued that Petitioner threatened the victim, and when he argued that the jury would be doing Petitioner a favor if they found him guilty in light of his admitted drug addiction. Respondent asserts that the claim is procedurally defaulted because Petitioner did not contemporaneously object to the comments.

The Michigan Court of Appeals rejected the claims as follows:

> Defendant next argues that the prosecutor's conduct requires reversal. We disagree. Because defendant did not object to the prosecutor's argument that defendant threatened the victim, we review this issue for plain error affecting defendant's substantial rights. *People v. Carines*, 597 N.W.2d 130 (Mich. 1999); *People v. Leshaj*, 641 N.W.2d 872 (Mich. App. 2002). The prosecutor's argument was supported by Kennedy's testimony that defendant repeatedly demanded "the green" and acted as though he was pointing something at her from his pocket, and reasonable inferences arising from that evidence. *People v. Watson*, 629 N.W.2d 411 (Mich. App. 2001). Therefore, it was not plain error.
>
> Defendant also argues that the prosecutor made an improper civic duty argument. Viewed in context, the prosecutor was commenting on defendant's police statement in which defendant stated that he was high on drugs when he committed the crime. To the extent that the prosecutor's remarks could be interpreted as an improper civic duty argument, i.e., as seeking a conviction to further the fight against drugs, *see People v. Bahoda*, 531 N.W.2d 659 (Mich. 1995); *People v. Abraham*, 662 N.W.2d 836 (Mich. App. 2003), any prejudice was cured by the trial court's instructions that the attorneys' arguments were not evidence and that the jury was to base its decision solely on the evidence properly admitted at trial. *People v. Thomas*, 678 N.W.2d 631 (Mich. App. 2004).
>
> Footnote

7

> Although we are compelled to affirm because of the jury instructions, we note that the prosecutor's words could have been understood to be a suggestion to the jury to convict defendant to save him from his continued abuse of drugs and alcohol. To state the obvious, the only reason defendant should be found guilty is if the evidence convinces the jury beyond a reasonable doubt that he in fact committed the crime. He should not be sent to prison to save himself from the consequences of his drug use. We therefore caution the prosecutor from making such arguments in the future.

*Baker*, *supra*, at 2.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000). To demonstrate that a "fundamental miscarriage of justice" would occur absent review of a petitioner's claim, the petitioner must assert a credible claim of actual innocence that is supported by reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 315-16 (1995).

Respondent is correct with respect to the first allegation of prosecutorial misconduct. The Michigan Court of Appeals found that allegation was not preserved by virtue of Petitioner's failure to object to the prosecutor's comments in the trial court which resulted in appellate review under the more restrictive "plain error" standard of review. It is

8

well-established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009).

The only conceivable candidate for cause would be an argument that Petitioner's trial counsel was ineffective for failing to object the alleged misconduct. However, when a petitioner claims ineffective assistance of counsel as cause for a procedural default, the allegation of ineffectiveness is a separate claim which must itself be exhausted in state court according to the normal procedures. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("The exhaustion doctrine…generally requires that a claim of ineffective assistance of counsel be presented to state courts before it may be used to establish cause for a procedural default.") According to *Edwards*, the failure to exhaust the ineffectiveness claim will itself constitute a procedural default of the cause argument and prevents a federal court from hearing it. 529 U.S. at 452. Petitioner never fairly presented a claim in the Michigan Court of Appeals that his trial counsel was ineffective for failing to object to the alleges instances of prosecutorial misconduct, and therefore he cannot demonstrate cause to excuse his default.

Because Petitioner has not established cause, the court need not address the issue of prejudice. See *McCleskey v. Zant*, 499 U.S. 467, 502 (1991). Yet, even if Petitioner had established cause, his showing of prejudice would fall short.

Petitioner claims that the prosecutor argued facts not in evidence when he asserted that Petitioner threatened Kennedy. In closing argument, the prosecutor stated:

> [Kennedy] was frightened out of her wits by Mr. Altoney Baker when

> he came into the restaurant, that diner, with this hoody on People's exhibit number one with a hand in his pocket.
>
> And you saw her reaction from the stand. She told you she was stunned and paralyzed. You heard from the two sisters were witnesses, sister one Erinda had to calm Mariah down after this was over she was very upset.
>
> Whatever Mr. Baker was in there doing both of the sisters in addition to Mariah Kennedy had after they saw Mariah giving over the money to Mr. Baker realized very quickly that this was a robbery in progress and simply kept their wits sufficient to step back and let this thing happen and give this man some room to escape.
>
> There is no doubt that Altoney Baker place Mariah Carey [sic] in fear for her very life not knowing whey this hand is in this pocket or what this pocket contained.

T 5-3-06, at 36.

These comments were a fair characterization of the testimony presented at trial. Kennedy testified that Petitioner had a hand in his pocket and was pointing an object at her. Kennedy testified that she was in shock and could not move after the encounter with Petitioner. She testified that after the robbery she just stood there while one of the other two women called the police. The argument was proper.

Petitioner next asserts that the prosecutor made a civic duty argument by commenting on Petitioner's drug use:

> It is no excuse and certainly no legal defense that Mr. Baker was high when this incident happened. As [his] statement indicates he had every intention.
>
> He has told you, yes, I committed this act. I didn't want to injure anyone but he certainly took all the steps to make sure he accomplished the taking of this money.
>
> He went in there he threatened that woman and she indeed complied, corroborated, in response to her fear of harm. Ladies and gentlemen, you should consider that arrest of Mr. Baker in this case as an intervention.

10

> He had indicated to you that he's doing drugs to the point where he's not taking care of his personal business.
>
> If we believe his statement, People's exhibit number three, he's not paying his bills, [he's] going into financial ruin.
>
> He's falling on hard times but these are hard times of his making. He's made a choice that he would rather do drugs than take care of his personal business ironically a verdict of guilty would be a blessing to this man.

Id. at 36-37.

Petitioner's counsel did object to this statement, and as indicated above, the Michigan Court of Appeals denied the claim on the merits. Accordingly, this claim is not procedurally defaulted.

The court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* A "civic duty" argument is one which "encourages the jury to convict the defendant based upon principles of protection of the community and encourages them to ignore the evidence in the case." *United States v. Mejorado-Soto*, 1995 U.S. App. LEXIS 39942 (6th Cir. Dec. 27, 1995)(per curiam). The challenged remark here was not designed to direct the jury away from the evidence in this case. Rather, it occurred after the prosecutor had already discussed the evidence tending to establish Petitioner's guilt, and it addressed the excuse Petitioner gave to the police. The argument did not rise to the level of remarks designed to incite prejudice in a jury. *See Puertas v. Overton*, 168 Fed. Appx. 689, 701 (6th Cir. 2006). Petitioner's claim is also defeated by the

fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. *Cameron v. Pitcher*, 2001 U.S. Dist. LEXIS 787, 2001 WL 85893, * 10 (E.D. Mich. January 4, 2001).

Accordingly, Petitioner is not entitled to habeas relief based on his second habeas claim.

### C. Sentencing Guidelines

Petitioner next asserts that the trial court erred in calculating the sentencing guidelines. Specifically, Petitioner asserts that the offense variable concerning the number of victims should have been scored to reflect a single victim rather than three victims. Respondent asserts that the claim is procedurally defaulted because Petitioner did not object to the scoring of the guidelines during the sentencing hearing.

Even assuming the claim was not subject to procedural default, Petitioner is not entitled to relief on this claim. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68,(1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.)(claim that sentencing court departed from Michigan sentencing guidelines presents an issue of

12

state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 861 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). This claim does not provide a basis for relief.

### D. <u>Suggestive Identification Procedure</u>

Petitioner's final claim asserts that the in-trial identification by the victim and the two eyewitnesses was tainted because the police conducted an on-the-scene identification procedure at the location he was arrested. Respondent asserts that the claim is procedurally defaulted because Petitioner failed to move to suppress the in-court identification of Petitioner.

The Michigan Court of Appeals denied this claim as follows:

> Finally, defendant argues that he was denied due process because he was subjected to an unduly suggestive on-the-scene identification procedure. Because defendant did not challenge the identification evidence in the trial court, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *Carines, supra* at 763-764.
>
> An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process. *People v. Williams*, 624 N.W.2d 575 (Mich. App. 2001). In order to challenge an identification on the basis of lack of due process, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *Id*.
>
> Contrary to what defendant argues, this Court has explicitly approved of on-the-scene identifications:
>
>> Such on-the-scene confrontations are reasonable, indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance. Whatever the perceived problems of on-the-scene

> confrontations, it appears to us that prompt confrontations will, if anything, promote fairness by assuring greater reliability. [*People v. Winters*, 571 N.W.2d 764 (Mich. App. 1997) (citations omitted).]
>
> *See also People v Libbett*, 251 Mich. App. 353, 361-363; 650 N.W.2d 407 (2002). There is no basis in the record for concluding that the procedure used here was unduly suggestive. Accordingly, plain error has not been shown.

*Baker, supra,* at 3.

Even if the claim were not defaulted, Petitioner would still not be entitled to habeas relief because the claim is meritless. Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive. If so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997) (*citing Neil v. Biggers*, 409 U.S. 188 (1972)).

The Michigan Court of Appeals denied relief on this claim finding that nothing in the record supported the conclusion that the on-the-scene procedure was unduly suggestive. That decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The United States Court of Appeals for the Sixth Circuit has held that bringing crime victims immediately to the scene of the crime to identify a defendant is not impermissible or a violation of due process. *See Bruner v. Perini*, 875 F.2d 531, 534-35 (6th Cir. 1989); *Stidham v. Wingo*, 482

F.2d 817, 818-19 (6th Cir. 1973); *see also United States v. Craig*, 198 Fed. Appx. 459, 466 (6th Cir. 2006). In fact, such procedures are "are essential to free innocent suspects and to inform the police if further investigation is necessary." *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998); *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987)(on-scene confrontations allow identification "before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons").

The on-scene identification procedure used here was not improper. An eyewitness was able to view Petitioner within minutes of the robbery. Moreover, there was little chance of an irreparable misidentification; Petitioner was driving the vehicle described by the witnesses, he was clothed as described by the witnesses, and he was carrying the roll of cash including a two-dollar bill as described by the witnesses. The in-court identification of Petitioner was sufficiently reliable to be admissible, notwithstanding the on-scene procedure that was conducted. Habeas relief is not warranted on this claim.

## IV. <u>Conclusion</u>

The Court will deny the Petition for Writ of Habeas Corpus. The Court will also deny Petitioner a Certificate of Appealability. Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits,

the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. Id. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because Petitioner has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson*, 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. Order

IT IS ORDERED that the Petition for Writ of Habeas Corpus is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 9, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 9, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager